2001 WY 117

**In the Matter of the Worker's Compensation Claim of Mark ROBERTS, An Employee of R & S Well Service.**

**Mark Roberts, Appellant (Employee Claimant),**

v.

**R & S Well Service, Appellee (Employer–Objector),**

and

**State of Wyoming, ex rel., Wyoming Workers' Safety and Compensation Division, Appellee (Objector–Defendant).**

No. 00–304.

Supreme Court of Wyoming.

Dec. 6, 2001.

Representing Appellant: G. Mark Garrison of Garrison & Bronnenberg, P.C., Cody, WY.

Representing Appellee State of Wyoming ex rel. Wyoming Workers' Safety and Compensation Division: Gay Woodhouse, Attorney General; John W. Renneisen, Deputy Attorney General; Gerald W. Laska, Senior Assistant Attorney General; and David L. Delicath, Assistant Attorney General.

Representing Appellee R & S Well Service: Brigita S. Krisjansons of Messenger & Jurovich, of Thermopolis, WY.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

HILL, Justice.

[¶1] Mark Roberts (Roberts) appeals from a decision denying him worker's compensation benefits for a shoulder injury on the grounds that he had failed to establish by a preponderance of the evidence that the injury was work-related. We affirm.

[¶2] Roberts' brief contains the following statement of the issue:

Whether the hearing examiner's decision denying employee/claimant's worker's compensation claim on the basis that the employee/claimant failed to satisfy his burden of proving that his injury occurred in the course of his employment was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

The employer, R & S Well Service, offers a statement of the issue in question format:

Was there substantial evidence to support the hearing examiner's decision that Mark Robert's [*sic*] failed to meet his burden of proving that he sustained his injury during the course of his employment with R & S Well Service, thereby making him ineligible for worker's compensation benefits?

The Wyoming Workers' Safety and Compensation Division (the Division) also offers a brief statement of the issue:

Did the Hearing Examiner correctly determine that Appellant failed to prove that his shoulder injury occurred in the course of his employment?

## FACTS

[¶ 3] R & S Well Service employed Roberts as a rig hand, a job that required him to latch pipe approximately 60 feet high in a derrick. On September 15, 1999, Roberts filed a claim for worker's compensation alleging that an injury occurred to his shoulder during the course of his employment on September 14, 1999. A contested case hearing on Roberts' claim was held on June 26, 2000. According to Roberts, he was up in the derrick latching pipe when a piece he was holding pulled away causing an injury to his shoulder. Initially, Roberts thought he had only pulled or strained a muscle, so he completed his shift despite numbness in his fingertips. Roberts managed to climb down the derrick but only was able to change his boots before leaving the well site.

[¶ 4] The next morning, Roberts' shoulder was swollen and bruised. He went to the emergency room and was ultimately diagnosed with "an external rotation type of injury which would tend to bring the ball anteriorly or forward relative to the socket." In other words, Roberts had suffered a dislocated shoulder. Roberts had a one-inch dislocation of the shoulder, and he would ultimately need surgery.

[¶ 5] Steven Shay, the safety manager for R & S Well Service, testified that it was his job to process workers' compensation claims. Shay indicated that he was suspicious of the legitimacy of Roberts' claim because on the day of the alleged incident, Roberts had been complaining that he did not think he could handle the job. Later, as part of his investigation into the injury, Shay interviewed Roberts' girlfriend, Tara.[1] She indicated that Roberts often lied to her, and she did not know whether he was telling the truth or not. When confronted with these statements at the hearing, Tara recanted insisting that the reason she made those statements to Shay was because she was angry with Roberts. Her testimony at the hearing was otherwise consistent with Roberts', *i.e.*, that he had complained of shoulder pain from an injury sustained while handling pipe at work. Tara also indicated that she had observed some bruising on Roberts' shoulder.

[¶ 6] Two other witnesses testified at the hearing. Calvin Werbelow, Roberts' supervisor, testified that no mention was made of a shoulder injury on the date of the alleged incident. At the time, Roberts had stated that he did not feel like he could "make it" at this job. Werbelow also testified that earlier on that day, Roberts had complained of a thumb injury but that he continued to work. A co-worker, Del Friendly, testified that Roberts had shown him the thumb injury, but similarly had made no mention of any shoulder injury. According to Friendly, Roberts continued to work and exhibited no difficulties when climbing down the 60 foot ladder at the end of the day. Contrary to Roberts' testimony that he had only changed his boots, Friendly asserted that Roberts had changed all of his clothes without any evident difficulty. Friendly, in fact, insisted that he would not have allowed Roberts to ride back to town in the pickup if Roberts had not changed his dirty clothes. Friendly also stated that Roberts did not show any signs of

---

1. Tara and Roberts were married sometime prior to the contested case hearing in this matter.

discomfort on the ride back to town, which traversed a rough dirt road.

[¶ 7] Medical testimony was presented through the deposition of Dr. Jimmie G. Biles. Dr. Biles testified that Roberts had suffered from a separated shoulder. However, when he saw Roberts on September 17, 1999, three days after the alleged incident, no bruising was evident in the shoulder area. Given the history presented by Roberts, Dr. Biles opined that the injury could have occurred as Roberts claimed. However, Dr. Biles testified that he did not think Roberts could have climbed down the ladder if his shoulder was one inch out of its socket. Dr. Biles opined that Roberts would have known whether he had simply strained or torn a muscle rather than separated his shoulder because of the difference in pain levels associated with the respective injuries.

[¶ 8] The hearing examiner concluded that Roberts had failed to show, by a preponderance of the evidence, that his shoulder injury was a work-related injury and denied benefits. The basis for the decision was the hearing examiner's conclusion that Roberts and his witness, Tara, lacked credibility in comparison to the witnesses for the employer and the Division. The hearing examiner decided that he could not "conclude that the causative mechanism of [Roberts'] shoulder condition was as [Roberts] testified."

[¶ 9] Roberts appealed the denial of benefits to the district court, which has certified the matter to this Court pursuant to W.R.A.P. 12.09(b).

## STANDARD OF REVIEW

[¶ 10] We have a well-established standard for reviewing denials of a claim for benefits when a hearing examiner concludes that a claimant has failed to meet the burden of establishing that the injury was work-related:

A claimant requesting worker's compensation benefits has the burden of proving all essential elements of a claim by a preponderance of the evidence. *Pederson v. State, ex rel. Workers' Compensation Div.*, 939 P.2d 740, 742 (Wyo.1997); *Goddard v. Colonel Bozeman's Restaurant*, 914 P.2d

1233, 1236 (Wyo.1996). To prove by a preponderance of the evidence, the claimant must bring forth "proof which leads the trier of fact to find that the existence of the contested fact is more probable than its non-existence." *Thornberg v. State ex rel. Workers' Compensation Div.*, 913 P.2d 863, 866 (Wyo.1996) (quoting *Scherling v. Kilgore*, 599 P.2d 1352, 1359 (Wyo.1979)).

When a hearing examiner concludes that a claimant has failed to meet his or her burden of proof, that conclusion is reversed only if it is found to be arbitrary, capricious, an abuse of discretion or not in accordance with law. *Pederson*, 939 P.2d at 742; *City of Casper v. Utech*, 895 P.2d 449, 452 (Wyo.1995); *Bohren v. State, ex rel. Workers' Compensation Div.*, 883 P.2d 355, 357–58 (Wyo.1994). Under the arbitrary, capricious and abuse of discretion standard, we are charged with examining the entire record. Wyo. Stat. Ann. § 16–3–114(c) (Lexis 1999); *Utech*, 895 P.2d at 452. In our examination and review of a hearing examiner's determination, we defer to the hearing examiner's findings of fact. *Pederson*, 939 P.2d at 742; *[Wyoming Steel & Fab, Inc. v. Robles*, 882 P.2d 873, 875 (Wyo.1994).] We will examine conflicting and contradictory evidence to see if the hearing examiner reasonably could have made its findings based on all the evidence before it. *Pederson*, 939 P.2d at 742, and cases therein cited. The findings of fact may include determinations of witness credibility, as the hearing examiner is charged with determining the credibility of the witnesses. *Pederson*, 939 P.2d at 742; *Utech*, 895 P.2d at 451, and cases therein cited. In our review, we will not overturn the hearing examiner's determinations regarding witness credibility unless they are clearly contrary to the overwhelming weight of the evidence. *Nellis v. Dep't of Transp.*, 932 P.2d 741, 743 (Wyo.1997); *Pederson*, 939 P.2d at 742; *Robles*, 882 P.2d at 875.

*Carrillo v. State ex rel. Wyoming Workers' Safety and Compensation Division*, 987 P.2d 690, 692–93 (Wyo.1999).

## DISCUSSION

[¶ 11] The burden was on Roberts to prove by a preponderance of the evidence that his injury arose out of and in the course of his employment. Wyo. Stat. Ann. § 27–14–102(a)(xi) (LexisNexis 2001). Roberts argues that he did, in fact, prove that his injury was work-related. According to Roberts, the hearing examiner's decision was flawed because he ignored relevant evidence in support of Roberts' claim and focused, instead, on determining witness credibility using peripheral and irrelevant evidence. In effect, Roberts' argument is that the hearing examiner used the determination on credibility to bootstrap a decision that Roberts had failed to meet his burden of proof.

[¶ 12] There is no question that Roberts suffered an injury to his shoulder. The only issue before the hearing examiner was whether that injury arose out his employment. First, Roberts insists that the hearing examiner failed to take into account his testimony about how the injury occurred—testimony that was not contradicted and had remained consistent throughout the proceedings. Next, he stresses Dr. Biles' testimony that Roberts' injury was consistent with his account of how it happened. Roberts argues that this was sufficient to meet his burden of proof. Roberts claims that, instead of addressing the evidence relevant to whether the injury occurred during the course of employment, the hearing examiner based his decision on witness credibility using evidence that was not relevant to the sole question at issue. There was no reason, Roberts insists, for the hearing examiner to find him not credible because his account of the injury was reasonable and had remained consistent throughout the proceedings. As for Tara's testimony, Roberts acknowledges that she made inconsistent statements. However, he argues that her credibility should not have been held against him because it placed an undue burden on him to disprove her earlier statement. At most, Roberts says the hearing examiner should have just disregarded her testimony. Finally, Roberts claims that the hearing examiner gave undue weight to Steven Shay's testimony. Roberts argues that Shay's testimony was not very credible because he gave conflicting reasons behind his motivation for investigating Roberts' claim. Accordingly, Roberts asserts that the hearing examiner's decision was arbitrary, capricious, an abuse of discretion, and not otherwise in accordance with law.

[¶ 13] Roberts is asking this Court to do exactly what it will not do when reviewing an agency decision: reweigh the evidence and determine the credibility of witnesses. First, our review of the record has left us with the firm conviction that the hearing examiner's determinations on witness credibility were not contrary to the overwhelming weight of the evidence. The hearing examiner clearly believed that the testimony of Roberts' girlfriend was not credible. Initially, she told the employer's safety officer that Roberts often lied and that she did not know whether he was telling the truth or not. Then, at the hearing, she backed Roberts' version of the events and insisted that she had made the earlier statements only because she was angry with Roberts. The hearing examiner was well within the bounds of reason when he discounted the girlfriend's hearing testimony. If Roberts had concerns about her testimony reflecting negatively on his case, then perhaps he should have reconsidered his decision to call her as a witness. Roberts' attack on the credibility of the employer's witness, Steven Shay, is equally unavailing. Even if we were to entirely discount his testimony, it would not affect our decision to affirm the hearing examiner's decision. Everything about which Shay testified was confirmed by the other witnesses for the employer and the Division or, in the case of the girlfriend's statements, admitted by her. Since Shay's testimony was consistent with the testimony offered by other witnesses, we could not conclude that the hearing examiner was wrong to find his testimony credible.

[¶ 14] As noted above, we defer to the hearing examiner's findings of fact and review conflicting and contradictory evidence to see if the hearing examiner could have reasonably concluded as he did, based upon all the evidence before him. *Carrillo*, 987 P.2d at 693. In this case, the hearing examiner concluded that Roberts' actions on the day that the alleged injury occurred were incon-

sistent with his account of the incident. Specifically, the hearing examiner noted that Roberts had questioned his ability to do the job and had complained about a thumb injury earlier that day. Yet, when Roberts' shoulder was allegedly injured while up in the derrick, Roberts told no one about it despite the severe pain that is associated with that type of injury. Furthermore, Roberts managed to climb down a 60 foot vertical ladder, change his clothes, and then ride in a cramped, standard cab pickup on a rough dirt road without mentioning or exhibiting any pain or discomfort. Similarly, the hearing examiner was free to give little weight to Dr. Biles' opinion that Roberts' injury could have arisen at work because that opinion was based entirely upon a history provided by Roberts and not upon objective, independent evidence. *Carrillo*, 987 P.2d at 693. Under these circumstances, we conclude that the hearing examiner's conclusions were reasonable.

## CONCLUSION

[¶ 15] The hearing examiner's decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Accordingly, the decision is affirmed.