36 P.3d 1145 (2001)
2001 WY 132
Henry CLARK, Appellant (Petitioner),
v.
STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).
No. 01-26.
Supreme Court of Wyoming.
December 21, 2001.
*1146 Donald L. Painter, Casper, WY, Representing Appellant.
Gay Woodhouse, Attorney General; Gerald W. Laska, Senior Assistant Attorney General; and David L. Delicath, Assistant Attorney General, Cheyenne, WY, Representing Appellee.
Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.
VOIGT, Justice.
[¶ 1] In February 1999, appellant, Henry Clark, was injured in a work-related accident. The Wyoming Workers' Safety and Compensation Division (the Division) paid appellant benefits for an injury to his left foot, but denied benefits for a claimed back injury. Following a hearing, the hearing examiner found that appellant was not a credible witness, that any back injury was pre-existing at the time of appellant's accident, and that appellant failed to prove that his employment materially aggravated such injury. Appellant petitioned the district court to review the hearing examiner's findings. In a December 2000, order, the district court affirmed the hearing examiner's determination and this appeal followed. We affirm.

ISSUE
[¶ 2] Appellant raises a single issue on appeal:
Whether the evidence and law support the Hearing Examiner's finding that Appellant's back condition was due to a pre-existing condition that began before this employment and that there had been no material aggravation of that pre-existing condition resulting in a new injury.
The Division, as appellee, phrases the issue in substantially the same manner.

FACTS
[¶ 3] Appellant began his employment with Western Technology Services, Inc. (WOTCO) in 1974. In February 1999, appellant was employed as a saw operator; as *1147 such, he carried twenty-foot long steel "bar stock," weighing approximately 210 pounds, from its rack to a saw two hundred feet or so away. He then used the saw to cut the bar stock to a specified length. Appellant testified that at 8:00 a.m. on February 22, 1999, as he reached down to grab the last bar, the "bar came right back off that balance point, right down on my foot." Appellant claimed that he then fell backwards or "stacked up" onto his "posterior" and then his back, and landed on some steel plates, where he lost his hard hat. After lying on the ground for five minutes, appellant slowly "got up" and called the foreman. His foot was red, but "not bruised. It wasn't broke and it wasn't bleeding." He experienced "excruciating" left leg pain, but no back pain. According to appellant, he had experienced right leg pain for a year prior to February 22, 1999, but not pain in his left leg.
[¶ 4] Appellant filled out an accident report dated March 1, 1999, stating that the "bar rolled off the rack and bounced off my left foot," but did not mention falling on his posterior or back. Appellant testified that he did not "put it down" because he did "a lot of falling backwards" and, despite including the term "over" and continuing his handwritten account on an additional sheet of paper that remained three-quarters blank, claimed not to have had "enough space to write all that story in there." The report also states that appellant experienced pain in the back of his left leg and, toward the end of the day, the small of appellant's back began to hurt and he could "barely walk."
[¶ 5] Appellant's treating physician was Dr. Johnny Tooke. Dr. Tooke's September, October, and November 1994 records indicate that appellant was experiencing left knee and left leg pain. His February 4, 1998, and February 2 and 12, 1999, notations state appellant had cramps in his "legs." The records note that appellant was seen February 22, 1999,[1] for back pain and further indicate that on February 26, 1999, appellant complained of periodic "sciatica" down the left leg and back pain, was unable to bend over, and could "hardly walk." Appellant was scheduled to undergo a lumbar spine MRI on March 4, 1999. It was not until March 12, 1999, that Dr. Tooke's records note appellant's accident at work, stating that appellant continued to experience leg pain with "lifting minimum weight," refer to a "disc prob in Back" and that appellant "picked up heavy Bar @ work & that was when Back began working." Dr. Tooke referred appellant to Dr. Robert Narotzky, a neurosurgeon.
[¶ 6] Appellant saw Dr. Narotzky on March 17, 1999. Dr. Narotzky noted in the "history" section of his dictation that appellant was referred for
evaluation of left leg pain. He has had difficulty for the past year. This began while he was at work at WOTCO, Inc. when he was lifting steel bars. These weigh anywhere from 2 pounds to close to 100 pounds. He has continued with pain that radiates from his lower back into his left buttock, posterior thigh and calf.
The doctor testified in a deposition that he understood "difficulty for the past year" to mean that appellant had experienced lower back and "leg" symptoms for the prior year. According to Dr. Narotzky, appellant did not mention falling onto his posterior or back after the bar fell on his left foot.
[¶ 7] After reviewing the findings from the MRI and a subsequent myelogram, Dr. Narotzky ultimately opined that appellant suffered from stenosis (narrowing of the spinal canal) at the L4-5 and "L6-S1" level, as well as a disk protrusion at the L5-6 level. According to the doctor, the stenosis was caused by degenerative conditions such as normal wear and tear, arthritis in appellant's back, and thickening ligaments, in conjunction with the protruding disk. Dr. Narotzky further testified as follows:
Q. [Appellant's counsel] Okay. I'm going to give you a hypothetical set of facts here for these next couple questions. Mr. *1148 Clark tells me that he had not had any previous injury or problem with his low back until February of this year, when heand it was at the steel mill where he works, the fabrication shop. And a steel bar fell toward him, and in an effort to get himself out of the way, he fell backward on his butt. And from then on, he had the symptoms that he reported to you.
With that history, do you have an opinion on the relationship, if any, between the fall as I've described it to you and the surgicalthe condition for which you did the surgery in Marchor May? I'm sorry.
A. I don't think the fall caused the degenerative problems in his low back. I think it may well have caused the disk protrusion which, combined with the degenerative changes, resulted in spinal stenosis.
Q. Okay. Is there any particular cause for stenosis, or is that just one of the degenerative changes you're talking about?
A. It's wear and tear changes. But other things can contribute to it, like a disk protrusion.
Q. When youin any of the times you've met with or taken care of Mr. Clark, have you seen any evidence that any of this low back problem was pre-existing as far asand I know these degenerative changes come on for years. But
A. Not by what Mr. Clark related to me; no.
He could not ascertain when appellant's disk protrusion occurred.
[¶ 8] Dr. Narotzky successfully performed a decompressive lumbar laminectomy in May 1999, from which appellant appears to have fully recovered. The doctor did not feel it was necessary to remove appellant's protruding disk during the surgery. Appellant informed Dr. Narotzky that, following the surgery, his "legs" felt "better than they have in years."
[¶ 9] On September 1, 1999, appellant returned to work with lifting restrictions. On September 28, 1999, appellant retired from his employment with WOTCO.
[¶ 10] The Division paid benefits for appellant's foot injury, but denied benefits for the claimed back injury because (1) it did not arise out of and in the course of employment (Wyo.Stat.Ann. § 27-14-102(a)(xi) (Michie Supp.1998)); (2) it was a pre-existing injury or condition at the time of employment (Wyo. Stat.Ann. § 27-14-102(a)(xi)(F)); and (3) it resulted from the natural aging process or the normal activities of day-to-day living (Wyo.Stat.Ann. § 27-14-102(a)(xi)(G)).
[¶ 11] Following a contested case hearing, the hearing examiner first concluded that appellant was not a credible witness because his accident report did not mention a fall as described in appellant's testimony and neither Dr. Tooke's nor Dr. Narotzky's medical records referred to such a fall. The hearing examiner additionally found that, based on the records and testimony regarding appellant's degenerative back condition, appellant had a "pre-existing lower back condition at the time of the injury" and had not presented sufficient evidence that he "suffered a material aggravation" of that condition by virtue of the accident.
[¶ 12] Appellant petitioned the district court to review the hearing examiner's determination. The district court affirmed the hearing examiner's decision, and this appeal followed.

STANDARD OF REVIEW
[¶ 13] We accord no special deference to the district court's decision and will consider the case as if it came directly from the agency. In re Jensen, 2001 WY 51, ¶ 9, 24 P.3d 1133, 1136 (Wyo.2001). Our review is limited to a determination of the factors specified in Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2001). The reviewing court shall:
Hold unlawful and set aside agency action, findings and conclusions found to be:
(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
* * *
(E) Unsupported by substantial evidence in a case reviewed on the record *1149 of an agency hearing provided by statute.
Wyo. Stat. Ann. § 16-3-114(c)(ii)(A) and (E).
[¶ 14] The interpretation and correct application of the provisions of the Wyoming Worker's Compensation Act are a question of law over which our review authority is plenary. In re Jensen, 2001 WY 51, ¶ 10, 24 P.3d at 1136. We affirm an administrative agency's conclusions of law only if they are in accord with the law. We do not afford any deference to the agency's determination, and we will correct any error made by the agency in either interpreting or applying the law. Id.
[¶ 15] In reviewing findings of fact, we examine the entire record to determine whether there is substantial evidence to support an agency's findings. Id. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusion. It is more than a scintilla of evidence. Id.
[¶ 16] The findings of fact may include determinations of witness credibility, as the hearing examiner is charged with determining the credibility of the witnesses. Roberts v. R & S Well Service, 2001 WY 117, ¶ 10, 35 P.3d 1219, 1222 (Wyo.2001) (quoting Carrillo v. State ex rel. Wyoming Workers' Safety and Compensation Div., 987 P.2d 690, 692-93 (Wyo.1999)). That "judgment is given deference in the reviewing court." Pederson v. State ex rel. Wyoming Workers' Compensation Div., 939 P.2d 740, 742 (Wyo.1997); Matter of Corman, 909 P.2d 966, 971 (Wyo. 1996). Indeed, we will not overturn the hearing examiner's determinations regarding witness credibility unless they are clearly contrary to the overwhelming weight of the evidence. Roberts, 2001 WY 117, ¶ 10, 35 P.3d at 1222 (quoting Carrillo, 987 P.2d at 692-93). Demonstrating evidentiary contradictions in the record does not establish the irrationality of the ruling, but we do examine conflicting evidence to determine if the agency reasonably could have made its finding and order based upon all of the evidence before it. Ikenberry v. State ex rel. Wyoming Workers' Compensation Div., 5 P.3d 799, 802 (Wyo.2000) (quoting Pederson, 939 P.2d at 742).

DISCUSSION
[¶ 17] Appellant argues that, especially considering Dr. Narotzky's testimony, there is no evidence to support the hearing examiner's finding that appellant's back injury was a pre-existing condition. Appellant further argues that even assuming that his back injury was a pre-existing condition, Wyo. Stat. Ann. § 27-14-102(a)(xi)(F) mandates that the condition exist at the "time of employment." According to appellant, there is no evidence that his back injury existed in 1974 when his employment commenced, and he therefore need not demonstrate that his employment materially aggravated the condition.
[¶ 18] Wyo. Stat. Ann. § 27-14-102(a)(xi) defines "injury" as
any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business. "Injury" does not include:
* * *
(F) Any injury or condition preexisting at the time of employment with the employer against whom a claim is made;[2]
(G) Any injury resulting primarily from the natural aging process or from *1150 the normal activities of day-to-day living, as established by medical evidence supported by objective findings[.]
(Emphasis added.)
[¶ 19] A claimant for worker's compensation benefits has the burden of proving all the essential elements of the claim by a preponderance of the evidence, including that the claimed injury arose out of and in the course of employment. Roberts, 2001 WY 117, ¶ 11, 35 P.3d at 1223. We note that there were apparently no eyewitnesses to appellant's accident. The testimony of "an injured worker alone is sufficient to prove an accident if there is nothing to impeach or discredit the worker's testimony and the worker's statements are corroborated by surrounding circumstances." Ikenberry, 5 P.3d at 803. "Moreover, the occurrence of injuries resulting from accidents to which there are no eyewitnesses does not prevent fair inferences from being drawn and findings of facts from being made." Id.
[¶ 20] The cause of appellant's claimed back injury is premised on his testimony as to how the accident occurred, as is Dr. Narotzky's deposition opinion testimony. Indeed, appellant's counsel stated at the contested case hearing that "[o]ur position is that . . . the fall caused a disc protrusion which with degenerative changes caused the spinal stenosis . . . ." The hearing examiner found that appellant was not a credible witness in this respect, in essence finding that appellant's claimed back injury did not "[arise] out of and in the course of [his] employment while at work" as the statute requires.
[¶ 21] Appellant testified that, after a bar fell on his foot, he fell backwards onto his posterior and back, and landed on some steel plates. The first time this particular version of appellant's accident appears in the record firsthand is his testimony at the contested case hearing held January 18, 2000.[3] Appellant did not include these details in his handwritten account of the accident contained in the report he filed soon after the accident. His explanation for not doing so was that, despite the additional page that admittedly remained three-quarters blank, he did not have "enough space to write all that story in there." In the weeks after the accident, appellant did not inform Dr. Narotzky of any such fall or a foot injury, and Dr. Tooke's records do not refer to a fall or a foot injury. Rather, Dr. Narotzky's dictation refers to appellant "lifting steel bars" and Dr. Tooke's notes refer to appellant picking up a "heavy" bar. The report from appellant's MRI similarly references a "lifting injury." It was not until March 12, 1999, after at least two or three visits to Dr. Tooke's office and a lumbar spine MRI, that appellant's medical records refer to a work-related accident.[4]
[¶ 22] Dr. Narotzky opined that appellant suffered from stenosis due to a degenerative back condition in conjunction with a protruding disk, which necessitated the decompressive lumbar laminectomy. In a hypothetical question, appellant's counsel then asked Dr. Narotzky to assume appellant had fallen *1151 backwards on his posterior and to render an opinion regarding the relationship of the fall to appellant's claimed back injury. The doctor responded that a fall "may" have caused the disk protrusion, but did not cause the degenerative condition. The doctor could not determine when the disk protrusion occurred. Absent credible testimony from appellant, or some corroboration from the surrounding circumstances, regarding such a fall, Dr. Narotzky's opinion as to the cause of appellant's protruding disk is meaningless in proving that the disk protrusion arose out of and in the course of appellant's employment.
[¶ 23] In Pederson, 939 P.2d at 741, Della Pederson, a seventeen-year employee of the Sheridan County School District, testified that she injured her foot when her ankle "snapped" while moving a loaded mixing bowl. Pederson did not state in her accident report[5] that her ankle snapped, nor did she mention it to the podiatrist she saw the next day. Id. at 741-42. The podiatrist diagnosed Pederson as having a progressive foot condition related to her diabetes, and Pederson had seen the podiatrist for symptoms in the same foot three days prior to the claimed accident. Id. Pederson also had been treated two years before the claimed accident for foot problems, and had fallen on the same foot the previous spring. Id.
[¶ 24] The hearing examiner found that, despite her testimony, Pederson did not suffer any "snap" or trauma to her foot at work. Id. at 742. On appeal, Pederson argued that no evidence was presented to show that she suffered an injury other than at work. We concluded that Pederson's "failure to tell her doctor about the claimed injury and her failure to set it forth on her Report of Injury, both events occurring within days of the claimed incident, provided a rational basis for the hearing officer to disbelieve her later testimony." Id.
[¶ 25] As in Pederson, we find that the referenced evidence provided a rational basis for the hearing examiner to disbelieve appellant's testimony and that, based on the state of the particular record before us, such a finding was not clearly contrary to the overwhelming weight of the evidence. It would be "improper for us to re-weigh the evidence under the circumstances" or substitute our judgment for that of the hearing examiner, especially considering the applicable standard of review. Id. at 742-43. See also Carrillo, 987 P.2d at 693-94. We affirm the hearing examiner's denial of benefits on this basis.
NOTES
[1] The notation is handwritten, initialed "KF," and appears next to notations dated March 12, 1999. There are no notations in the medical records for February 22, 1999. Appellant testified that he did not see Dr. Tooke on February 22, 1999, but saw the doctor for the first time February 26, 1999. Appellant's accident report states that he saw Dr. Tooke on February 26, 1999. Appellant apparently also saw someone in Dr. Tooke's office on March 1, 1999.
[2] A pre-existing condition may be compensable if the employment aggravated, accelerated, or combined with the pre-existing condition to produce the disability for which the employee is seeking benefits. Bright v. Sheehan Pipeline, 960 P.2d 1009, 1010 (Wyo.1998). The burden remains on the claimant to prove that the injury is compensable. Brees v. Gulley Enterprises, Inc., 6 P.3d 128, 131 (Wyo.2000).
[3] A May 11, 1999, letter from Dr. Tooke addressed to the Division states merely that appellant's most recent injury was "his lower back resulting from a fall on February 22, 1999." The letter, dated nearly three months after the accident, contains no further detail, and does not refer to the source of this information. A handwritten notation states "letter to Henry" and "not sent to comp."

The only other references include a September 27, 1999, deposition wherein appellant's counsel first asked Dr. Narotzky whether appellant had informed him of the alleged fall, to which the doctor replied "not that I have recorded in my record; no," and later posed the hypothetical question asking Dr. Narotzky to assume appellant "fell backward on his butt" to "get himself out of the way" as a "steel bar fell toward him," and a September 30, 1999, disclosure statement.
[4] Appellant testified that he had not ever had left leg pain prior to February 22, 1999, and appeared to indicate that he similarly did not experience back pain immediately prior to that date. According to Dr. Narotzky, appellant stated that he had lower back and leg symptoms for a year prior to the accident, and Dr. Tooke's records reflect that appellant had cramps in his "legs" immediately prior to February 22, 1999. Appellant informed Dr. Narotzky that, after the surgery, his "legs" felt better than they had in years.

In addition, appellant testified that he did not experience back pain on February 22, 1999. However, the accident report states that by the end of that day, the small of appellant's back began to hurt and he could barely walk.
[5] Pederson's accident report stated that "I went to work. My foot hurt some. As morning progressed, my foot got extremely bad. I could not handle pain and I had to go home." Pederson, 939 P.2d at 741.