228 P.3d 61 (2010)
2010 WY 39
Joshua Todd ALPHIN, Appellant (Petitioner),
v.
STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).
No. S-09-0085.
Supreme Court of Wyoming.
April 1, 2010.
*63 Representing Appellant: Donna D. Domonkos, Cheyenne, Wyoming.
Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; John W. Renneisen; Deputy Attorney General; and James Michael Causey, Senior Assistant Attorney General; and Cara Boyle Chambers, Assistant Attorney General.
Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.
HILL, Justice.
[¶ 1] In this worker's compensation case, Appellant, Joshua Todd Alphin (Alphin), challenges the order of the district court which affirmed the "Findings of Fact, Conclusions of Law and Order" issued by a hearing examiner for the Office of Administrative Hearings. Alphin contends that the hearing examiner abused his discretion and acted in a manner that was arbitrary, capricious or not otherwise in accordance with applicable law in denying Alphin's claim for benefits. He also contends that the findings made by the hearing examiner were not supported by substantial evidence. We will affirm.

ISSUES
[¶ 2] Alphin raises these issues:
I. Whether the [hearing examiner] abused his discretion, acted arbitrarily, capriciously or otherwise not in accordance with [law] when he denied [Alphin's claim for] benefits.
II. Whether the [hearing examiner's] decision denying benefits was supported by substantial evidence.
The Workers' Safety and Compensation Division (Division) asks:
I. Did the hearing examiner have sufficient evidence to support the finding that [Alphin's] low back injury was a preexisting condition which was not related to nor materially aggravated by his workplace injury of December 12, 2005?
II. Was the hearing examiner's decision in accordance with the law and neither the result of arbitrary or capricious reasoning?
In his reply brief, Alphin responds:
I. Whether the arbitrary and capricious standard of review applies when the hearing examiner acts without considering all the facts and circumstances.
II. This Court has the authority to review whether a lower court's action enforced an illegal contract even when raised for the first time on appeal.

FACTS AND PROCEEDINGS
[¶ 3] For purposes of context, we relate these preliminary facts and circumstances. It is undisputed that Alphin was injured in the course and scope of his employment on *64 December 12, 2005. It is also undisputed that his employer, Black Horse Construction, Inc., convinced him to seek medical treatment outside the constraints of the Worker's Compensation Act because that was of significant benefit to the employer. The employer paid for Alphin's medical treatment for a short period of time, but fired him because he was unable to work, due to his injury, and then discontinued making such payments on his behalf. It was not until Alphin was incarcerated at the Wyoming State Penitentiary in mid-2006, that he filed a claim for benefits.
[¶ 4] Alphin's claim was initially denied because it was not timely filed with the employer or with the Division. However, at the hearing the Division conceded that, given the above-described circumstances, Alphin's claim was to be heard as if it had been timely filed and was to be decided on its merits.
[¶ 5] The hearing examiner concisely identified the issue to be considered at the hearing: "[W]hether or not Mr. Alphin can prove that his current low back condition and need for continued treatment is directly related to his December 2005 work injury (either as an acute new injury or a material aggravation of a preexisting condition)."
[¶ 6] Alphin described his December 12, 2005, injury in his "Wyoming Report of Injury," which he filed on August 29, 2006, while incarcerated at the Wyoming State Penitentiary:
On the injury date I was unloading a trailer of trash into the trash bin at the intersection of Luman and Burma Rd. when Juan brought the backhoe around to grab bigger pieces off the trailer. [M]y back was to him and the equipment and I could not see when the hoe on the backhoe slipped and I was standing beside the trailer and another employee Jose was on the trailer when the backhoe struck me and pinned me to the trailer. The operator Juan backed off and helped me to the truck where we then notified a supervisor[.]
[¶ 7] Alphin first saw Robert Berg, M.D., on December 13, 2005, in Pinedale. He assessed Alphin's condition like this: "Impression is severe left pelvic bone contusion and hip joint, muscle contusion of left thigh secondary to a backhoe accident." He was also treated by Blane A. Woodfin, M.D., on December 13, 2005, and Dr. Woodfin's notes briefly described the injury Alphin reported. Dr. Woodfin went on to say:
He was able to ambulate into the clinic here at Pinedale today and was seen by Dr. Berg. He found evidence of no soft tissue injury to the abdomen or pelvis. The patient's complaints are centered about the anterior iliac area and the anterior aspect of the hip. He has no past history of injury. He does have an extensive history of lumbar spine problems, but has no current complaints of back pain.
[¶ 8] Alphin testified that about three weeks after the event described above, he began experiencing severe back pain, although he reported no such pain immediately following the accident. Alphin denied previous back injury, but he did concede that in late June of 2005, he did present at the Memorial Hospital of Sweetwater County with low back pain. The treatment he received at that time revealed that he had "moderate size disc herniations at L4-5 and L5-S1." The attending physician's notes indicate that Alphin reported he "had four years of on and off low back pain since falling off a roof [in 2001]." The attending physician also noted that after that June 2005 appointment, Alphin was given an epidural steroid injection to treat the back pain. That did not produce the desired results and Dr. Ludwig F. Kroner recommended "operative treatment." Alphin further testified that after his last visit with Dr. Kroner, his back did get better, and that is when he began looking for work which, in turn, led to the job with Black Horse where he suffered the injury which is directly at issue in this case.
[¶ 9] Alphin claimed that he did not hurt his back in the 2001 incident and that when he went to work for Black Horse, he was not experiencing any back problems. Nevertheless, it was Alphin's intention, as well as that of Black Horse, that he not put significant strain on his back while working. However, beginning several weeks after the injury involving *65 the backhoe, Alphin was experiencing severe back pain.
[¶ 10] The Division sent Alphin's medical records to Mark R. Rangitsch, M.D., for an evaluation. Dr. Rangitsch provided this report to the Division:
Specifically, Mr. Alphin, apparently, has had longstanding lumbar spinal problems, dating back to, likely a fall, from a roof back in 2001. He was treated for low back problems. Actually, before the injury of 12/2005, Dr. Kroner had recommended surgical intervention to his lumbar spine. At the time of his accident, he apparently did not injure his lumbar spine, per Dr. Berg's note. He had epidural steroid injection for the lumbar spine, in June 2005. And, again, he was recommended to have surgery prior to his accident of December 13, 2005.
Therefore, for your specific questions:
1. Did the patient have any apparent injuries to his lumbar spine on 12/13/2005? It appears that he did not. He had an injury to the left hip and pelvis, but not to the lumbar spine. And, actually, he was denying back pain at the time of his injury.
2. Is the patient's lumbar spine condition, or a need for lumbar spine treatment, due to the work incident on 12/13/2005, or more due to his lumbar spine degenerative disease, from his MRI scan noted on 6/24/2005? I do not believe his current lumbar spine condition is due to any injury on 12/13/2005, but likely due to his longstanding problems prior to that point.
3. Did the work incident on 12/13/2005 cause a material aggravation to Mr. Alphin's preexisting lumbar spine condition and cause the need for future treatment? I do not believe it did.
[¶ 11] Alphin's treatment at the state penitentiary revealed that he was prescribed pain medication for his back problems. Eventually, he was sent to see Kenneth Schulze, M.D., during August and September of 2007 for further evaluation of his back problems. Dr. Schulze had a new MRI done and compared it with the MRI done in Rock Springs in June 2005. In an August 19, 2007 letter to penitentiary medical staff, Dr. Schulze opined:
Comparing the 2005 with the 2007 MRI study there has been a marked increase in the disc herniation at L4-L5 with significant prolapse of disc material and inferior migration of that disc material. Nerve root impingement as described by Roy Hediger, M.D., is noted.
It is my recommendation that Joshua Alphin undergo a micro-laminotomy for disc excision to relieve the nerve root entrapment.
[¶ 12] A part of Alphin's evidence included a letter sent to Dr. Schulze, dated October 24, 2007, asking that he answer several questions. The answers given by Dr. Schulze are underscored below, but in the letter his hand-written answers are difficult to decipher:
1. Please summarize the history and treatment you have provided to Mr. Alphin, including your diagnosis. Answer: Attached (The document attached is the information quoted immediately above from Dr. Schulze's August 19, 2007 letter. In the briefs, the hearing examiner's findings, and in the district court's decision letter, the word "answered" is used, rather than "attached." Our close examination of the document in question convinces us that the word is attached, although it makes no difference in the outcome of this case.)
2. Would it be unusual for Mr. Alphin's low back symptoms to appear shortly after the accident in the context of his initial complaints of hip and pelvic pain as set forth in Dr. Woodfin's treatment notes? Answer: No.
3. Did Mr. Alphin's work related injury in December of 2005 cause a material aggravation of any preexisting condition or was this a new injury? Please state the basis of your opinion. A material aggravation has been defined for the purposes of Wyoming law as:
"The work effort contributed to a material degree to the precipitation, aggravation or acceleration of the preexisting *66 condition of the employee. The injury is compensable if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the injury or infirmity." Answer: Yes

[4.] Please state whether in your opinion, based on a degree of medical probability, whether Mr. Alphin will require future medical care regarding those conditions causally related to his work related injury in December of 2005, and if so, the expected duration and cost for that treatment. Answer: Yes. Cannot tell you duration/cost.

[5.] I have enclosed Dr. Rangitsch's record review report for your review. Please state if you agree or disagree with Dr. Rangitsch's opinion and the basis of your opinion. Answer: Disagree.

DISCUSSION

Standard of Review
[¶ 13] Because of the issues raised here, there are three aspects of the applicable standard of review that we must apply. In Dale v. S & S Builders, L.L.C., 2008 WY 84, ¶¶ 22-24, 188 P.3d 554, 561 (Wyo.2008) we detailed our revised statement of those standards:
Thus, in the interests of simplifying the process of identifying the correct standard of review and bringing our approach closer to the original use of the two standards, we hold that henceforth the substantial evidence standard will be applied any time we review an evidentiary ruling. When the burdened party prevailed before the agency, we will determine if substantial evidence exists to support the finding for that party by considering whether there is relevant evidence in the entire record which a reasonable mind might accept in support of the agency's conclusions. If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. See, Wyo. Consumer Group v. Public Serv. Comm'n of Wyo., 882 P.2d 858, 860-61 (Wyo.1994); [Board of Trustees v.]Spiegel, 549 P.2d [1161] at 1178 [Wyo.1976] (discussing the definition of substantial evidence as "contrary to the overwhelming weight of the evidence"). If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.

The arbitrary and capricious standard remains a "`safety net' to catch agency action which prejudices a party's substantial rights or which may be contrary to the other W.A.P.A. review standards yet is not easily categorized or fit to any one particular standard." Newman[v. State ex rel. Wyoming Workers' Safety and Compensation Div.], [, 2002 WY 91, ¶ 23, 49 P.3d [163] at 172 [2002]. Although we explained the "safety net" application of the arbitrary and capricious standard in Newman, we will refine it slightly here to more carefully delineate that it is not meant to apply to true evidentiary questions. Instead, the arbitrary and capricious standard will apply if the hearing examiner refused to admit testimony or documentary exhibits that were clearly admissible or failed to provide appropriate findings of fact or conclusions of law. This listing is demonstrative and not intended as an inclusive catalog of all possible circumstances. Id.

There will be times when the arbitrary and capricious standard appears to overlap with some of the other standards. For example, a decision against the great weight of the evidence might properly be called arbitrary or capricious in everyday language. However, the words "arbitrary" and "capricious" must be understood in context as terms of art under the administrative review statute and should not be *67 employed in areas where the more specifically defined standards provide sufficient relief. [Emphasis added.]

Were the Hearing Examiner's Credibility Determinations Sustainable under the Substantial Evidence Test
[¶ 14] The hearing examiner made several determinations concerning credibility. The only witness to testify in person was Alphin. To the extent the hearing examiner made credibility determinations with respect to him, those determinations are clearly sustainable under the substantial evidence test. This is so because Alphin contradicted his own testimony several times. He denied a back injury in 2001, although he appears to have at least suggested such an injury to Dr. Kroner. He did not report a back injury to the physicians he saw on December 13, 2005. Alphin's self-report of injury was generally inconsistent and we conclude that, considered in its totality, his testimony might well have been deemed not credible, in significant part, by the hearing examiner.
[¶ 15] The hearing examiner also made credibility determinations as to documents used as exhibits. In particular, he found Dr. Rangitsch to be more credible than Dr. Schulze, because Dr. Schulze's answers were incomplete, excessively terse, and he did not "explain," although some questions called for at least some explanation. The hearing examiner also scored Dr. Schulze for at least one significant inaccuracy in his summary of Alphin's medical history (the timing of his treatment with Dr. Kroner and the December 12, 2005 injury). Both the district court and this Court have had the same materials available for examination as did the hearing examiner. The hearing examiner couched his assessment of these matters as going to credibility, although they might more accurately be described as going only to the "weight" to be given the testimony in question. To the extent the hearing examiner did discount the exhibits described above, we conclude that there is substantial evidence in the record to sustain the hearing examiner's findings in those regards.

Did the Hearing Examiner Properly Conclude That Alphin Did Not Meet His Burden of Proof
[¶ 16] The principles governing a claimant's burden of proof are well established:
In order to be eligible to receive worker's compensation benefits, a claimant must have sustained an "injury" as defined by Wyo. Stat. Ann. § 27-14-102(a)(xi) (LexisNexis 2001). "`Injury' means any harmful change in the human organism other than normal aging ... arising out of and in the course of employment while at work...." To demonstrate that an injury arose out of the course of employment, the claimant must establish a causal connection between the work-related incident and the injury. Hanks v. City of Casper, 2001 WY 4, ¶ 6, 16 P.3d 710, 711 (Wyo.2001). The claimant bears the burden of proving this causal connection by a preponderance of the evidence. Clark v. State ex rel. Wyoming Workers' Safety and Compensation Div., 2001 WY 132, ¶ 19, 36 P.3d 1145, 1150 (Wyo.2001). "A `preponderance of the evidence' is defined as `proof which leads the trier of fact to find that the existence of the contested fact is more probable than its non-existence.'" Matter of Worker's Compensation Claim of Thornberg, 913 P.2d 863, 866 (Wyo.1996) (quoting Scherling v. Kilgore, 599 P.2d 1352, 1359 (Wyo. 1979)).

Anastos v. General Chemical Soda Ash, 2005 WY 122, ¶ 20, 120 P.3d 658, 665-66 (Wyo.2005).
"Injury," as the term is defined in Wyo. Stat. Ann. § 27-14-102(a)(xi) (LexisNexis 2003) of the Wyoming Workers' Compensation Act, does not include any injury or condition preexisting at the time employment begins with the employer against whom a claim is made. However, "in Wyoming an employer takes the employee as he finds him." Lindbloom v. Teton International, 684 P.2d 1388, 1389 (Wyo.1984). If an employee suffers from a preexisting condition, that employee may still recover if *68 his employment substantially or materially aggravates that condition. Id. In Lindbloom, we cited with approval the widely accepted treatise, Larson's Workmen's Compensation Law, for the proposition that:
Preexisting disease or infirmity of the employee does not disqualify a claim under the "arising out of employment" requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought.
1 Larson's Workmen's Compensation Law, § 12.20, p. 273-276. Larson goes on to say:
Since the rule of law stated at the beginning of this section is so widely accepted, in practice most of the problems in this area are medical rather than legal. * * * * It will be found, then, that denials of compensation in this category are almost entirely the result of holdings that the evidence did not support a finding that the employment contributed to the final result. Whether the employment aggravated, accelerated, or combined with the internal weakness or disease to produce the disability is a question of fact, not law, and a finding of fact on this point * * * * based on any medical testimony * * * * will not be disturbed on appeal.

Id., § 12.20, p. 313-16.

Boyce v. State ex rel. Wyoming Workers' Safety & Comp. Div., 2005 WY 9, ¶ 10, 105 P.3d 451, 454-55 (Wyo.2005).
Expert opinion testimony ordinarily will be required to establish the link between the employee's work activity or injury and the preexisting disease or condition; the expert need not state with specificity that the work activities or injury materially or substantially aggravated, accelerated, or combined with the preexisting disease or condition to necessitate the medical treatment for which compensation is sought; and the expert need not apportion between the work activity or injury and the preexisting disease or condition; the relative contribution of the work activity or injury and the preexisting disease or condition is not weighed.

Ramos v. State ex rel. Wyoming Workers' Safety & Comp. Div., 2007 WY 85, ¶ 18, 158 P.3d 670, 677 (Wyo.2007) (citing Boyce, ¶¶ 11, 16, 105 P.3d at 455-56).
Straube v. State ex rel. Wyo. Workers' Safety and Compensation Div., 2009 WY 66, ¶ 15, 208 P.3d 41,47-48 (Wyo.2009).
[¶ 17] The hearing examiner's findings of fact mirrored those we have set out above. Alphin, of course, had the burden of proof in these proceedings:
The claimant has the burden of proving each of the essential elements of his claim by a preponderance of the evidence. Sherwin-Williams Co. v. Borchert, 994 P.2d 959, 963 (Wyo.2000). As a part of that burden, the claimant must prove a causal connection exists between a work-related injury and the injury for which worker's compensation benefits are being sought. That determination involves a question of fact. Taylor, ¶ 9, 123 P.3d at 146; Morgan v. Olsten Temp. Servs., 975 P.2d 12, 16 (Wyo.1999).
Dale, ¶ 35, 188 P.3d at 563.
[¶ 18] Alphin asserted that he did not hurt his back until the time he went to work for Black Horse. However, the medical evidence was not entirely consistent with his claims in that regard, as we have set out more fully above. Given these circumstances, the hearing examiner was required to sift through that evidence with great care:
[The claimant's] injury presented complex medical issues related to causation that would normally signify a need for the trier of fact to rely on the technical medical knowledge of an expert. A finder of fact is not necessarily bound by an expert's medical testimony. Morgan v. Olsten Temporary Services, 975 P.2d 12, 16 (Wyo. 1999) (citing Forni v. Pathfinder Mines, 834 P.2d 688, 693 (Wyo.1992)).
It is the hearing examiner's responsibility, as the trier of fact, to determine relevancy, assign probative value and ascribe the relevant weight given to medical testimony. [Clark v. State ex rel. *69 Wyoming Workers' Safety and Compensation Div., 934 P.2d 1269, 1271 (Wyo. 1997)] (citing Matter of Workers' Compensation Claim of Thornberg, 913 P.2d [863] at 867 [Wyo. 1996]). "The hearing examiner [is] also in the best position to judge the weight to be given to the medical evidence." [Matter of Goddard, 914 P.2d 1233, 1237 (Wyo.1996); Latimer v. Rissler & McMurry Co., 902 P.2d 706, 711 (Wyo.1995)] "The trier of fact may disregard an expert opinion if he finds the opinion unreasonable or not adequately supported by the facts upon which the opinion is based." Clark, 934 P.2d at 1271.

Morgan, 975 P.2d at 16.
Hicks v. State ex rel. Wyo. Workers' Safety and Compensation Div., 2005 WY 11, ¶ 21, 105 P.3d 462, 471 (Wyo.2005).
[¶ 19] Moreover,
This Court has been equally clear in its requirements for the consideration to be given medical opinion testimony.
When presented with medical opinion testimony, the hearing examiner, as the trier of fact, is responsible for determining relevancy, assigning probative values, and ascribing the relevant weight to be given to the testimony.... In weighing the medical opinion testimony, the fact finder considers: (1) the opinion; (2) the reasons, if any, given for it; (3) the strength of it; and (4) the qualifications and credibility of the witness or witnesses expressing it.

Decker[v. State ex rel. Wyoming Medical Comm'n], [2005 WY 160] ¶ 33, 124 P.3d [686] at 697 [2005] (quoting Baxter v. Sinclair Oil Corp., 2004 WY 138, ¶ 9, 100 P.3d 427, 431 (Wyo.2004) (quoting Bando v. Clure Bros. Furniture, 980 P.2d 323, 329 (Wyo.1999))).
Worker's Compensation Claim of Rodgers v. State ex rel. Wyo. Workers' Safety and Compensation Div., 2006 WY 65, ¶ 24, 135 P.3d 568, 576 (Wyo.2006).
[¶ 20] Alphin also advances what sounds like a "res ipsa loquitor" argument in support of his claims. That is, the only reasonable conclusion that can be reached, given the record extant, is that a blow from a backhoe, such as that suffered by Alphin, requires that the fact-finder accept as a given that Alphin must have suffered the sort of back injury he claims to have sustained. Although Alphin does not support this contention with pertinent authority, our inquiry reveals that the facts and circumstances of this case do not merit bringing that legal construct to bear. See 27 Am.Jur.2d Employment Relationships § 362 (Application of res ipsa loquitor doctrine) (2004).
[¶ 21] Having gone through the exercise set out above, we conclude that there is substantial evidence to support the agency's decision to reject the evidence offered by Alphin after considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole.

Applicability of the Arbitrary and Capricious Standard
[¶ 22] Alphin contends that his ability to successfully prosecute his claim for worker's compensation benefits was so hampered by his side deal with Black Horse and his subsequent inability to get timely medical attention for his back problems, following the December 12, 2005 incident, that this Court should apply the arbitrary and capricious safety net described in Dale. We have carefully examined this contention, and we conclude that Alphin's circumstances are not ones that call into play that "safety net."

CONCLUSION
[¶ 23] We affirm the district court's order which affirmed the hearing examiner's findings and conclusions.