In the Matter of the Claim for Worker's Compensation.

Steve LINDBLOOM, Appellant (Employee-Claimant),

v.

TETON INTERNATIONAL, Appellee (Employer-Defendant).

No. 83-247.

Supreme Court of Wyoming.

Aug. 2, 1984.

David A. Drell, Casper, for appellant.

Harry E. Leimback, Casper, for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

ROONEY, Chief Justice.

Appellant-employee, Steve Lindbloom, was denied benefits by the district court under the Wyoming Worker's Compensation Act for medical and hospital expenses, as well as temporary total disability for injury suffered to his right leg while in the course of employment with appellee, Teton International.

We affirm the district court's ruling.

The injury occurred on April 6, 1983. Appellant was carrying a box of tools to a rental unit he was to service when he slipped on some ice and his right knee popped out of its socket.

Appellant had suffered a similar dislocation of his left knee on January 15, 1982, while employed by appellee, when a roll of roofing metal fell, causing him to fall off a scaffold. At that time appellant went to Dr. Landon, whose deposition was intro-

duced at the hearing in district court. Dr. Landon there testified in part:

"Q. (BY MR. GUETZ) Doctor, have you had occasion to examine Steve Lindbloom?

"A. Yes. I saw him the first time January 26th, 1982, a referral from Doctor Summers. And he came in complaining of bilateral knee pain, knee pain on both sides. Both knees were bothering him.

"Q. Both knees?

"A. Both knees * * *."

In response to the question as to whether Dr. Landon had obtained a medical history from appellant, he said:

"A. He stated that the right kneecap had gone out once and his left had also gone out once. And at the time I saw him, he didn't—I don't have in my record and I do not recall how they occurred— that his left knee was still swollen at the time that he came into the office. On examination of his knees, both of them had what we call easily subluxatable patellas or kneecaps, which means that they—you could grab the kneecap and pull it partially out of the joint, both of them."

Dr. Landon put leg braces on him. But since they did not help much, Dr. Landon "recommended arthroscopic surgery on his knee and what's called a lateral release, which is a type of procedure done to release the pull on the kneecaps so they wouldn't go out of joint."

However, appellant elected not to have the recommended surgery at that time. He did have the surgery after the April 6 injury to his right knee, and he filed a Worker's Report of Accident and Claim for Award. Appellee objected to payment of the medical or temporary disability claims of appellant. After a hearing, the district court issued a Decision Letter and an Order denying the claims inasmuch as the appellant knew he needed knee surgery prior to the April 6 injury, and there was no evidence that the injury made his knee worse or that the surgery eventually performed was any different than the earlier recommended surgery. The district court

also ruled that appellant could not recover for any problems in connection with his left knee, as it was not related to the injury under consideration in this claim.

Appellant states the issue on appeal, very simply, as follows:

"WHETHER THE DISTRICT COURT ERRED IN FINDING THAT THE EMPLOYEE'S INJURY WAS NOT COMPENSABLE UNDER THE WYOMING WORKER'S COMPENSATION ACT."

The duty of the reviewing court in worker's compensation cases is to search the record to determine the presence or absence of substantial evidence to support the district court. *Olson v. Federal American Partners*, Wyo., 567 P.2d 710, 712 (1977). Where a finding of fact is supported by substantial evidence, the judgment of the trier of fact will not be disturbed. *Williams v. Northern Development Co.*, Wyo., 425 P.2d 594, 595 (1967).

Appellant correctly notes that in Wyoming an employer takes the employee as he finds him.

"* * * Compensation is not made to rest under our law upon the condition of health of the employee or upon his freedom from liability to injury through a constitutional weakness or latent tendency. An award is made for an injury which is a hazard of the employment, and as said by the Supreme Court of Massachusetts in the case of *In re Madden*, 222 Mass. 487, 111 N.E. 379, 382, L.R.A.1916D, 1000, 'it is the hazard of the employment acting upon the particular employee in his condition of health and not what that hazard would be if acting upon a healthy employee or upon the average employee. The act makes no distinction between wise or foolish, skilled or inexperienced, healthy or diseased employees. All who rightly are describable as employees come within the act.'" *In re Scrogham*, 52 Wyo. 232, 73 P.2d 300, 307 (1937).

The question then arises whether the work effort contributed to a material degree to the precipitation, aggravation or

acceleration of the existing condition of the employee. *Jim's Water Service v. Eayrs,* Wyo., 590 P.2d 1346, 1349 (1979).

"Preexisting disease or infirmity of the employee does not disqualify a claim under the 'arising out of employment' requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought. * * * " 1 Larson's Workmen's Compensation Law, § 12.20, p. 3–276.

Larson's goes on to say, § 12.20, p. 3–316:

"Since the rule of law stated at the beginning of this section is so widely accepted, in practice most of the problems in this area are medical rather than legal. * * * It will be found, then, that denials of compensation in this category are almost entirely the result of holdings that the evidence did not support a finding that the employment contributed to the final result. Whether the employment aggravated, accelerated, or combined with the internal weakness or disease to produce the disability is a question of fact, not law, and a finding of fact on this point * * * based on any medical testimony * * * will not be disturbed on appeal."

There is testimony in the record that when appellant slipped on the ice he fell to the ground in pain, and there was immediate swelling in his right knee. However, Dr. Landon testified:

"Steve, the patient, had very skinny legs with increased pull angle, which is an increased angle which makes him a little more prone to dislocation than someone that doesn't have quite as bad an angle of pull."

He also testified that while trauma could aggravate or cause a condition such as what appellant suffered when he slipped on the ice, he made it clear that:

"Yes. It could cause the kneecaps to dislocate. It doesn't cause his increased angle of pull or anything like that, no."

The surgery that was performed was to correct appellant's preexisting condition of easily subluxatable patellas. The injury on April 6 did not change the need for, or extent of, such surgery.

 If the disability in question results solely from the "natural and normal progress of the pre-existing condition," it is not a disease "attributable to industry and should not be saddled thereon." *Tanenbaum v. Industrial Accident Commission,* 4 Cal.2d 615, 52 P.2d 215, 216 (1935). The trial court did not err in finding appellant's injury to be non-compensable. There was sufficient evidence to support the court's findings.

Affirmed.