James A. McCOLLEY, Appellant (Employee-Claimant),

v.

The STATE of Wyoming, ex rel. WYOMING WORKER'S COMPENSATION DIVISION, Appellee,

Exeter Drilling Company, (Employer-Defendant).

No. 85–138.

Supreme Court of Wyoming.

Nov. 6, 1985.

Dennis C. Meier, Lusk, for appellant.

A. G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Terry J. Harris, Asst. Atty. Gen., for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

ROONEY, Justice.

This is an appeal from an order, after trial to the court, denying a worker's compensation claim. Appellant's issue on appeal is best summarized by appellee as follows:

"I. Did the trial court err in finding that Appellant failed to establish, by a preponderance of the evidence, that he suffered a compensable injury while working with Exeter Drilling Company[?]"

Thus, we must review the record to determine the presence or absence of substantial evidence to support the district court. *Lindbloom v. Teton International,* Wyo., 684 P.2d 1388, 1389 (1984); *Olson v. Federal American Partners,* Wyo., 567 P.2d 710, 712 (1977). Where a finding of fact is supported by substantial evidence, the judgment of the trier of fact will not be disturbed. *Lindbloom v. Teton International,* supra; *Schepanovich v. United States Steel Corporation,* Wyo., 669 P.2d 522, 529 (1983). In determining sufficiency of the evidence, we assume the evidence in favor of the successful party to be true, leave out of consideration the evidence of the unsuccessful party in conflict therewith, and give the evidence of the successful party every favorable inference which may reasonably and fairly be drawn from it. *Anderson v. Bauer,* Wyo., 681 P.2d 1316, 1319 (1984); *Yost v. Harpel Oil Company,* Wyo., 674 P.2d 712, 716 (1983). Furthermore, the burden of proof in a worker's compensation case is on the injured worker to establish his claim by a preponderance of the evidence. *Matter of DeForrest,* Wyo., 603 P.2d 865 (1979); *Matter of Haynie,* Wyo., 592 P.2d 693 (1979).

In this case appellant testified that approximately a week after he began work with Exeter Drilling he was at the top of a derrick stacking pipe joints as they were being pulled out of the hole. In stacking the pipe, appellant had to stand on the portion of the rig into which the pipe is racked, which is called the "fingers," and which is located about eighty feet above the ground. Appellant testified that his right foot slipped between the fingers and that as he fell his weight was placed on his left leg and his left knee twisted, causing the injury upon which this case is predicated. Appellant further testified that after the fall he rode the elevator down to the floor, and then slipped and fell again as he walked across the wet floor. Appellant did not see a doctor at that time. Appellant continued to work for Exeter for one to two weeks, quitting to accept employment by the Natrona County Sheriff's Office.

Appellant's supervisor at Exeter testified that after the slip in April of 1983 appellant told him that he was all right and could finish that tour; that he did not request to see a doctor; and that he was able thereafter to perform his duties and did not miss any work.

In July of 1983, appellant's knee again suffered a disengagement and he went to the hospital. The records kept by the doctor at that time said that:

"Thirty-two year old deputy sheriff, twisted his left knee originally playing basketball. He heard something 'pop',

the knee swelled-up a lot. Since that time he's had recurrent episodes of disengagement, going out of the knee associated with swelling. Presents today with a recent episode of giving-way of the knee."

Appellant's doctor testified that appellant was suffering from an anterior cruciate ligament tear that was chronic and at the very least six weeks old, and from a medial meniscus tear that was acute, and "occurred probably at the time of his most recent episode which was that episode of playing basketball."

On July 9, 1983, when appellant visited the hospital, he advised both the hospital and the doctor to bill his personal health insurance and the health insurance provided him by his employer, the Sheriff's Office. At the time he was well aware of the reporting requirements for and benefits provisions of the worker's compensation system.

At trial, appellant's doctor testified, by deposition, as follows:

"On page 20 the question is, 'Based on those facts, is it possible for you to form a medical opinion as to when the anterior cruciate ligament tear occurred?'

"Answer, 'Okay, all I am going to do is just repeat what I said before. Based on what I visualized, the objective evidence that I have when I am looking at the ligament through the orthoscope and also when I actually opened the knee up on the day I operated on him, he had a chronic anterior cruciate ligament tear, and I previously indicated in my testimony that it had to be at least six weeks old, if not older, and that's all I can say. I cannot really pin it down beyond that. You can come up with almost any scenario of the sequence of events of how things happen, and it doesn't necessarily mean that the anterior cruciate ligament had to be the first injury of the knee. An ultimate scenario would be that he could have, for example, sustained a small tear of the cartilage and then a subsequent injury, wipe out the anterior cruciate ligament, and then out of the

increased instability in the knee, then—at a subsequent injury after that—then finish off the medial meniscus, for example, on the July 9th when he presented himself to the emergency room. So there is almost any number of scenarios.'

\*     \*     \*     \*     \*     \*

"All right, on page 23 where Mr. Burley is asking the questions and Dr. Behrens is answering, the question is, 'This is Tom Burley again, Doctor. I just have one question. Isn't it true, then, that what you are saying is that it is only within the realm of medical possibility that the anterior cruciate ligament tear occurred when he fell through the fingers, and you can't say that it is within the realm of medical probability that it occurred then?'

"Answer, 'That's absolutely correct.' "

The trial court, in its Order Denying Claims for Awards, found that appellant had not established, by a preponderance of the evidence, that he suffered a compensable injury and

"2. That the evidence showed that the Employee-Claimant had injured his knee prior to commencing his employment, with the Employer-Defendant, in April 1983, and that the tear of the anterior cruciate ligament of his left knee was chronic and could have occurred as much as two years prior to the tear of the median meniscus, which occurred on or about July 9, 1983, after his employment with the Employer-Defendant was terminated."

■ After the careful and thorough review that this court gives to every record on appeal, we find there was ample evidence to support factual findings of the district court in all respects.

Affirmed.