**Timothy T. ROMERO, Appellant (Petitioner/Employee–Claimant),**

v.

**DAVY MCKEE CORPORATION, Appellee (Respondent–Employer).**

No. 92–265.

Supreme Court of Wyoming.

June 7, 1993.

George Santini of Graves, Santini & Villemez, P.C., Cheyenne, for appellant.

Michael Rosenthal and Rebecca L. Hellbaum of Hathaway, Speight, Kunz, Trautwein & Barrett, Cheyenne, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

MACY, Chief Justice.

This is an appeal from the district court's order affirming an independent hearing examiner's decision that Appellant Timothy T. Romero's employment with Appellee Davy McKee Corporation did not materially contribute to, aggravate, or accelerate the continued loosening of Mr. Romero's wrist implant.

We affirm.

Mr. Romero provides this statement of the issues:

1. Did the hearing officer err in ruling that employee-claimant's wrist injury was not compensable where the medical evidence established that the injury arose as a result of his continuing work efforts as a pipefitter including those with Davy McKee Corporation?

2. Did the hearing officer and district court apply the wrong legal standard for the determination of whether an aggravation of a pre-existing injury results in a compensable injury?

3. Did the hearing officer err as a matter of law in failing to apply the provisions of § 27–14–603(e), W.S. 1977

(1991 Repl.)[1] where the employee-claimant's injury was directly related to his continuing work efforts as a pipefitter?

On August 12, 1991, Mr. Romero filed a worker's compensation report of injury in which he related that he was injured on June 27, 1991, during the course and scope of his employment. He described his injury as follows:

I was pulling two pieces of 8″ pipe together with a wire come-a-long. The bolt holding the gear came out when there was extreme press[ure] as I was pulling[,] releasing all the press[ure] to my hand & wrist.

On the day he was injured, Mr. Romero received treatment for a laceration to his thumb, and he returned to work. He did not complain specifically of an injury to his wrist at that time. Davy McKee Corporation objected to Mr. Romero's claim for worker's compensation benefits. By a letter dated September 13, 1991, the Workers' Compensation Division concluded that Mr. Romero had a preexisting condition and that the injury was an exacerbation of that condition. Mr. Romero requested a hearing.

A hearing was held on May 8, 1992. At the conclusion of the proceedings, the hearing examiner issued these findings:

2. Employee–Claimant Timothy T. Romero, Sr. claimed an injury to his left wrist, stemming from a work-related accident which occurred on June 27, 1991, while at work for Employer Davy McKee Corporation at a construction site located in Laramie County, Wyoming.

3. Employee–Claimant Timothy T. Romero, Sr. had suffered a previous work-related injury to his left wrist in the State of Montana which required seven prior surgeries, including the implantation of a prosthetic device in the wrist and for which he received workers' compensation benefits in the State of Montana.

4. There was no factual dispute concerning the previous injuries sustained by Mr. Romero to his left wrist, nor the medical treatment provided prior to July 1990.

5. Having reviewed the extensive medical testimony provided in this matter through the depositions of Drs. R.N. Hans[e]n and Patrick McDonald, the Office finds that Employee–Claimant Timothy T. Romero, Sr.'s current condition did not arise out of or in the course of employment while at work for Employer Davy McKee Corporation.

6. As such, Employee–Claimant Timothy T. Romero, Sr. has not met the required burden of proof set out in Wyoming Statutes § 27–14–603(a) or 27–14–102(a)(xi).

7. The Office finds that where, as here, the medical conditions involved are complex, the testimony of the medical experts is important and helpful.

8. Having carefully reviewed the transcripts of the medical experts presented by the parties prior to the hearing, the Office finds that the testimony of Employer's expert, Dr. Patrick McDonald, [is] the more persuasive medical view as to what took place and adopts his view that Employee–Claimant's wrist condition was the result of a degenerative process which occurred over a long period of time.

9. As such, the Office finds that nothing in Employee–Claimant Timothy T. Romero Sr.'s employment with Davy McKee Corporation materially contributed to, aggravated or accelerated the preexisting conditions in Employee–Claimant Romero's left wrist and that the loosening process which affected Employee–Claimant's left wrist prosthesis began prior to his employment with Davy

---

1. Wyo.Stat. § 27–14–603(e) (1991) provides:

(e) Notwithstanding W.S. 27–14–201, in those proceedings in which the entitlement of a worker to benefits for successive compensable injuries is established but no single employer can be determined to be chargeable for the injuries, the division shall distribute the benefit charge to employers within the general industrial classification in which the employee was engaged at the time his most recent claim arose.

This statutory provision has an effective date of July 1, 1991.

McKee Corporation and continued during that time. It was not materially aggravated by the scope and course of employment with Davy McKee Corporation.

The hearing examiner disallowed Mr. Romero's claim but did not require reimbursement of previously awarded interim temporary total disability benefits. The Workers' Compensation Division alerted Mr. Romero and his health care providers that his claims could be submitted in Montana under his previous claim there.

On June 15, 1992, Mr. Romero filed a petition for review in the district court. The Workers' Compensation Division was joined in the review proceedings as a respondent. On October 9, 1992, the district court issued an order affirming the hearing examiner's decision:

> Petitioner [Romero] argues that the relevant inquiry in this matter is whether the loosening was causally connected to his employment as a pipefitter[;] if so, he is entitled to benefits. Petitioner relies upon W.S. § 27–14–603(a)(i):
>
>> (a) The burden of proof in contested cases involving injuries which occur over a substantial period of time is on the employee to prove by competent medical authority that his claim arose out of and in the course of his employment and to prove by a preponderance of evidence that:
>>
>>> (i) There is a direct causal connection between the condition or circumstances under which the work is performed and the injury; ...
>
> This provision must be read *in pari materia* with the definition of "injury" at W.S. § 27–14–102(a)(xi) which provides that "injury" does not include "[a]ny injury or condition preexisting at the time of employment with the employer against whom a claim is made."
>
> A preexisting injury may present a compensable claim "['']if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the ... disability for which compensation is sought....[']" 1 Larson's Workmen's Compensation Law, § 12.20, p. 3–276."
> *Lindbloom v. Teton International,* 684

P.2d 1388, 1390 (Wyo.1984). A claim for aggravation of a preexisting injury requires proof that the "work effort contributed to a *material degree* to the precipitation, aggravation or acceleration of the existing condition of the employee. [Citation omitted.]" (Emphasis added.) *Lindbloom,* supra at 1389–90. This is the analysis, or rather standard, used by the hearing examiner.

The hearing examiner found that nothing in Romero's employment with McKee "materially contributed to, aggravated or accelerated the pre-existing conditions in [his] left wrist ..." This finding is supported by substantial evidence in the testimony of Dr. McDonald. He viewed the loosening as a degeneration over a period of time, and not the result of any incident while in the employ of McKee. The record supports the proposition that while the loosening continued to occur during the employment with McKee, the work effort did not materially contribute, aggravate, or accelerate this condition.

This Court cannot substitute its discretion for that of the hearing examiner as to factual disputes. The inquiry at this level of review commences with a search in the record for substantial evidence to support the findings. If such evidence is found in the record, the inquiry comes to an end. *Lindbloom,* supra at 1389.

Our task is to examine the entire record to determine if substantial evidence exists to support the hearing examiner's findings. We will not substitute our judgment for that of the hearing examiner if his decision is supported by substantial evidence. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. *Farman v. State ex rel. Wyoming Workers' Compensation Division,* 841 P.2d 99, 102 (Wyo. 1992).

Mr. Romero had worked as a pipefitter for more than ten years prior to the incident which gave rise to this appeal. In 1985, while working in Montana, Mr. Romero suffered an on-the-job injury which resulted in many surgeries being performed on both of his wrists. The injury was the

subject of a worker's compensation claim filed in Montana, and that matter was settled for approximately $50,000. Mr. Romero's medical history, as it affects the issues raised in this appeal, is well summarized in a letter[2] written by his primary physician, Jeffrey N. Hansen, M.D.:

I certainly know Tim quite well and have taken care of him for about 6 years. The problem that he has with his left wrist is an ongoing one and has presented great difficulty. The problem initially was wrist ligament instability that occur[r]ed on a traumatic basis working as a pipefitter. He also developed carpal tunnel syndrome.

Our initial procedure was a limited wrist fusion which failed to relieve his symptoms. We then went on to an attempted complete wrist fusion which we failed to achieve after two tries. Since he had a successful wrist fusion on the right side, we were disappointed with that because, even though having both wrists fused is not necessarily the best option, it is an option that is relatively permanent. However, after our attempts failed to get this wrist fused, we elected to use a bony ingrowth type of prosthesis that was developed, as you know, by Dr. Beckenbaugh at the Mayo Clinic. That prosthesis was originally designed for patients with rheumatoid arthritis and low demand, but a number of them have been used, to my understanding, in people who do construction work and more demanding work with the knowledge that there is really no way to be sure that the prosthesis will hold up. The whole point behind bony ingrowth prostheses is to allow more normal function than we could ever achieve with a cemented type of component in the wrist joint, or any other joint for that matter.

The hope was that these types of bony ingrowth prostheses could end up being very strong and literally permanent and allowing close to normal activity, with the only potential problem being wear of the plastic surface on the joint. It turns out that the feeling continues to be that once these prostheses achieve good bony union they may well be permanent. That doesn't mean that some of them won't loosen. It may well be that the prostheses never really get full mechanical ingrowth to start with and then they gradually loosen from there. What that means is that, instead of a bony attachment, they get a fibrous or scar tissue attachment that gradually loosens with time.

With Mr. Romero, he was doing some work off and on for a period of a year or so and not having much problem. It might be added that the prosthesis that was currently in place was a custom prosthesis designed especially for him because he loosened his first one. He certainly is a person who demonstrated previous aseptic loosening and it is entirely possible that that had been developing even though his wrist was asymptomatic. Usually, when the component starts to loosen, symptoms occur which were not occurring in this gentleman at the time he was working. He states that the symptoms all developed after the alleged incident when he had a winch kick back on him. It is entirely possible that the prosthesis was loosening from the standpoint of lucency around the component radiographically, but that the fibrous attachment was still reasonably solid.

All I can do is believe the patient when he tells me it was comfortable before the injury. I think that he had a fibrous union that was torn loose when the come

---

**2.** The letter was prepared about a week after Davy McKee Corporation took the physician's deposition, and Mr. Romero sought to have it introduced into evidence at the hearing. Davy McKee Corporation objected to the letter's introduction because it had no opportunity to cross-examine the doctor concerning its contents and because the letter was offered "at the last minute." The hearing examiner refused to admit the letter into evidence. Because the letter contains such a useful summary and captures Dr. Hansen's other testimony in a narrative form, we will use it here. However, we do not in any way question the hearing examiner's decision to refuse its admission which was grounded upon Mr. Romero's failure to timely offer the exhibit. The hearing examiner acted well within his discretion in refusing evidence developed at the "last minute" which could have been prepared within the time limits for submitting exhibits.

along kicked back on him. I think, for that reason, the incident, as described, had a significant contribution to the need for more surgery. I would certainly have to say, however, that this occurred in the setting of a pre-existing condition that may well have been gradual aseptic loosening and the event in question simply exacerbated the loosening and made it worse or brought it to the need for medical attention. You have to realize that this is really not a black or white question and does not represent a yes or no answer.

I believe what, with a reasonable degree of medical certainty, we can say that the patient had bony ingrowth wrist prosthesis which was reasonably comfortable and then got more symptomatic after the alleged incident. We cannot deny that the prosthesis may have been loosening before that, but the patient simply wasn't feeling it. I think more likely he had a stable fibrous ingrowth that got jerked loose, presenting a more mechanical type of instability. From the standpoint of cause and effect and responsibility, it would seem appropriate to me that this problem is 50% due to pre-existing situation and 50% due to the new injury.

Dr. Hansen's deposition testimony and written reports are equivocal about the "cause" of the loosening of Mr. Romero's wrist implant. When read in their entirety, they tend to support the proposition that the accident at issue here at least contributed to the loosening of the implant. In addition to the testimony offered by Dr. Hansen, Patrick McDonald, M.D. concluded that Mr. Romero's work for Davy McKee Corporation contributed to a continuum of loosening which began when Mr. Romero resumed working as a pipefitter in 1990 after recovering from his seventh surgery. Mr. Romero had worked as a pipefitter in both California and Washington before coming to work in Wyoming in June of 1991. Although Mr. Romero claimed to have greater and different pain after June 27, 1991, his testimony revealed that he suffered almost constant "arthritic"-type pain in his wrists.

In *Lindbloom v. Teton International,* 684 P.2d 1388 (Wyo.1984), we held that, when the disability in question results solely from the " 'natural and normal progress of the pre-existing condition,' it is not a disease 'attributable to industry.' " 684 P.2d at 1390 (quoting *Tanenbaum v. Industrial Accident Commission,* 4 Cal.2d 615, 52 P.2d 215, 216 (1935)). More importantly, when such circumstances are in question, we are confronted with a finding of fact which is usually derived from medical testimony. If substantial evidence is present in the record to support that finding of fact, we will not disturb it on appeal. *Hohnholt v. Basin Electric Power Co-op,* 784 P.2d 233, 234 (Wyo.1989); *Mountain States Telephone & Telegraph Company v. Carpenter,* 736 P.2d 311, 313 (Wyo. 1987); *Lindbloom,* 684 P.2d at 1389. Though the cases involving factual circumstances like those presented here are not common, comparable rulings from other appellate courts assure us of the prudence of our holding. In *Patterson v. Clarke County Motors, Inc.,* 551 So.2d 412 (Ala. Civ.App.1989), a determination that loosening of an implanted prosthetic hip was the result of an on-the-job injury was affirmed on the basis that substantial evidence supported that finding. In that case, the appellate court noted that the medical testimony supported these conclusions: The worker had not experienced prior problems with the prothesis; the worker required hospitalization immediately following the injury; and no evidence existed to indicate that the worker had engaged in activities which might have caused loosening of the prothesis. 551 So.2d at 415–16. None of those facts are present in Mr. Romero's case. In *Bassett v. Civil Service Commission of City of Philadelphia,* 100 Pa. Cmwlth. 356, 514 A.2d 984 (1986), the appellate court noted that, when a conflict occurs in the medical testimony as to whether the loosening of a prosthesis was caused by a particular on-the-job injury or was secondary to total hip failure, determinations of the credibility and weight to be accorded the evidence are vested in the fact finder.

In this instance, conflicts exist in the medical testimony; however, substantial evidence is present to support the hearing examiner's determination. This is especially so in light of the requirement that he consider the weight and credibility to be given to the contradictory and, in many instances, internally inconsistent medical testimony.

Affirmed.